IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DODGE-REGUPOL, INC., | : | No. 3:06-CV-0236 |
| Plaintiff | : | |
| | : | Judge John E. Jones III |
| v. | : | |
| | : | |
| RB RUBBER PRODUCTS, INC., | : | |
| Defendant | : | |

## MEMORANDUM

November 12, 2008

This patent dispute is before the Court on two motions:  the Motion to Place

the Second Amended Answer and Counterclaims on File (Doc. 91) of the

defendant RB Rubber Products, Inc. ("RB Rubber") and the Motion to Dismiss

Pursuant to Fed. R. Civ. P. 41(a)(2) (Doc. 85) of the plaintiff Dodge-Regupol, Inc.

("DRI").  For the reasons set forth below, RB Rubber's motion will be granted, and

the second amended answer and counterclaims will be docketed.  However, DRI's

motion will also be granted, and this case will be dismissed.[1]

## I.    BACKGROUND

DRI filed the complaint in this action on January 31, 2006, alleging RB

Rubber "made, used, offered to sell, sold and may now or in the future make, use

---

[1] RB Rubber requests oral argument on these motions.  (Doc. 97-2.)  The Court finds that
the motions may be decided on the parties' comprehensive submissions.

1

and/or sell" flooring products infringing on its U.S. Patent 6,920,723 (the "'723 patent"). (Compl, Doc. 1, ¶¶ 10-11.) On March 3, 2006, RB Rubber filed an answer and asserted counterclaims for a declaration of the invalidity of the '723 patent and a declaration of non-infringement. (Doc. 4.) After briefing from the parties, the Court conducted a *Markman* hearing on December 22, 2006. After receiving post-hearing submissions, the Court issued an order on March 9, 2007 construing the terms of the '723 patent. (Doc. 48.)

By the same order, the Court granted RB Rubber leave to file an amended answer and counterclaims, which were docketed on that date (Doc. 53). In addition to its two prior-asserted counterclaims, RB Rubber asserted a new counterclaim for tortious interference with business relationships based on DRI's contacting RB Rubber customers and advising them to cease purchasing RB Rubber products or risk legal action. (*Id.* at 4.)

The parties thereafter entered into several stipulations to extend discovery and expert report deadlines and to continue the trial term of this action (*see* Docs. 49-50, 54-55, 57-58, 61-63, 68-69, 74-75, 77-78, 80), and became embroiled in a dispute over discovery (*see* Docs. 70, 72).

On January 2, 2008, RB Rubber filed a motion for leave to file a second amended answer and counterclaims. (Doc. 76.) DRI concurred in the motion.

2

(Doc. 79.)  RB Rubber's proposed second amended answer and counterclaims, a copy of which was attached to its motion (Doc. 76-5), withdrew its counterclaim for tortious interference with business relationships and asserted two new counterclaims for a declaration of invalidity and unenforceability of the '723 patent based on inequitable conduct and misrepresentation to the Patent and Trademark Office ("PTO").  By order of January 8, 2008, the Court granted RB Rubber leave to file its second amended answer and counterclaims and ordered it do so within twenty days.  (Doc. 80.)  RB Rubber, however, never separately filed its second amended answer and counterclaims on the docket.   Nonetheless, RB Rubber continued to take discovery from both third-parties and DRI regarding the claims asserted in its second amended answer and counterclaims, and the parties entered into another dispute over discovery.

Meanwhile, DRI filed a reissue application with the PTO, asserting the same claims as those already issued in the '723 patent and 37 additional claims.

On May 30, 2008, DRI moved to withdraw its infringement claims against RB Rubber pursuant to Fed. R. Civ. P. 41(a)(2).  (Doc. 85.)  DRI also "covenant[ed] not to sue RB [Rubber] in the future for infringement of any claim of the '723 patent with respect to any of RB [Rubber]'s currently existing products

or activities." (*Id.* at 1.)  On the basis of this covenant not to sue, DRI moved to dismiss RB Rubber's counterclaims for lack of subject matter jurisdiction.

## II.    DISCUSSION

### A.    RB Rubber's Motion to Place the Second Amended Answer and Counterclaims on File

RB Rubber's failure to actually docket its second amended answer and counterclaims brings us to the first motion before the Court:  RB Rubber's motion to place this submission on file.  Like RB Rubber, the Court finds DRI's opposition to this motion perplexing.  DRI concurred in RB Rubber's motion for leave to file the second amended answer and counterclaims.  A copy of the amended pleading was attached to RB Rubber's motion, and the parties have clearly proceeded to litigate this case as if that document were the operative pleading.  The Court has already granted RB Rubber leave to file the second amended answer and counterclaims.  RB Rubber represents that simple mistake is the reason the amended answer was never docketed separately from its motion, and DRI has given no reason to disbelieve this assertion.  Nor has DRI demonstrated that it would suffer any prejudice by allowing the docketing of the amended answer now.  The Court will relieve RB Rubber of its clerical error and direct the Clerk of the Court to docket RB Rubber's second amended answer and counterclaims, which will be deemed the operative pleading in this action.

4

**B.    DRI's Motion to Dismiss**

With  RB Rubber's second amended answer and counterclaims "officially"

filed, the claims remaining in this action are DRI's claims of infringement of the

'723 patent and RB Rubber's counterclaims seeking declaratory judgments of

invalidity, unenforceability, and non-infringement of the '723 patent.  By its

motion to dismiss, DRI withdraws its infringement claims and "covenants not to

sue RB [Rubber] in the future for infringement of any claim of the '723 patent with

respect to any of RB [Rubber]'s currently existing products or activities."  DRI

argues that, in light of the withdrawal of its claims and its covenant not to sue,

there is no claim of infringement against RB Rubber and no threat of such a claim

in the future, and therefore, the Court lacks subject matter jurisdiction over RB

Rubber's declaratory judgment counterclaims.  For the reasons explained below,

the Court holds that DRI is correct and that this action must be dismissed for lack

of subject matter jurisdiction.

The Declaratory Judgment Act provides in relevant part that "[i]n a case of

*actual controversy* within its jurisdiction, ... any court of the United States, upon

the filing of an appropriate pleading, may declare the rights and other legal

relations of any interested party seeking such declaration, whether or not further

relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).  Addressing

the act in the patent context, "[t]he Supreme Court recently re-affirmed that the Act's 'actual controversy' requirement "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1336 (Fed. Cir. 2007) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764, 771 (2007)). Thus, "[a] party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of proving that the facts alleged, 'under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007) (quoting *MedImmune*, 127 S. Ct. at 771). "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since," and "an actual controversy must be extant at all stages of review, not merely at the time the complaint was filed." *Id.* at 1344-45 (citations omitted).

Prior to the Supreme Court's decision in *MedImmune*, Federal Circuit precedent required that there be "both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory

plaintiff that it will face an infringement suit, and (2) present activity which could

constitute infringement or concrete steps taken with the intent to conduct such

activity." *Id.* at 1343-44.  In *MedImmune*, however, the Supreme Court rejected

this reasonable apprehension of suit test and held that in order for a court to have

jurisdiction over a declaratory judgment action:

> the dispute be definite and concrete, touching the legal relations of
> parties having adverse legal interests; and that it be real and substantial
> and admit of specific relief through a decree of a conclusive character,
> as distinguished from an opinion advising what the law would be upon
> a hypothetical state of facts.  Basically, the question in each case is
> whether the facts alleged, under all the circumstances, show that there is
> a substantial controversy, between parties having adverse legal interests,
> of sufficient immediacy and reality to warrant the issuance of a
> declaratory judgment.

*Id.* at 1344 (quoting *MedImmune*, 127 S. Ct. at 771).

In the patent context, "'if a party has actually been charged with

infringement of the patent, there is, necessarily, a case or controversy adequate to

support jurisdiction' at that time."  *Id.* (quoting *Cardinal Chem. Co. v. Morton

Int'l, Inc.*, 508 U.S. 83, 96 (1993) (internal punctuation and emphasis omitted).

"[W]here a patentee asserts rights under a patent based on certain identified

ongoing or planned activity of another party, and where that party contends that it

has the right to engage in the accused activity without license, an Article III case or

controversy will arise and the party need not risk a suit for infringement by

engaging in the identified activity before seeking a declaration of its legal rights."
*Id.* (quoting *SanDisk Corp. v. STMicroelectronics NV*, 480 F.3d 1372, 1381 (Fed.
Cir. 2007)).

Under Federal Circuit precedent, however, a properly executed covenant not
to sue for infringement not only moots the controversy with respect to
infringement, but also eliminates subject matter jurisdiction with respect to
remaining declaratory claims for patent invalidity and unenforceability.
*MedImmune, Inc. v. Genentech, Inc.*, 535 F. Supp. 2d 1000, 1005 (C.D. Cal. 2008)
(on remand from Supreme Court and Federal Circuit).  This is because the
covenant not to sue eliminates any cause of action the declaratory judgment
defendant may have against the declaratory judgment plaintiff.  *See Benitec*, 495
F.3d at 1344 ("A useful question to ask in determining whether an actual
controversy exists is what, if any, cause of action the declaratory judgment
defendant may have against the declaratory judgment plaintiff.").  "Without an
underlying legal cause of action, any adverse economic interest that the declaratory
plaintiff may have against the declaratory defendant is not a legally cognizable
interest sufficient to confer declaratory judgment jurisdiction."  *Id.* (quoting
*Microchip Tech. Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 943 (Fed. Cir.
2006)).

In this case, DRI has withdrawn its infringement claims against RB Rubber and "covenant[ed] not to sue RB [Rubber] in the future for infringement of any claim of the '723 patent with respect to any of RB [Rubber]'s currently existing products or activities."  RB Rubber concedes that a covenant not to sue may divest a court of jurisdiction over declaratory judgment claims for patent invalidity and unenforceability, but makes a number of arguments as to why DRI's covenant not to sue is not properly executed so as to eliminate jurisdiction over its declaratory judgment counterclaims in this case.

First, RB Rubber argues that DRI's covenant not to sue is insufficient because it covers only RB Rubber's currently existing products and not future products.  This argument has been repeatedly rejected by federal courts.  To eliminate jurisdiction over declaratory judgment claims, a covenant not to sue "need not cover potentially infringing activities in the future as long as it covers the past and present activities that constitute the 'actual controversy' between the parties."  *MedImmune*, 535 F. Supp. 2d at 1000 (citing *Benitec*, 495 F.3d at 1345-48).  The Federal Circuit has held, both before and after the Supreme Court's *MedImmune* decision, that the mere possibility that a declaratory judgment plaintiff might develop infringing products in the future does not establish a basis for declaratory judgment jurisdiction.  *See, e.g.*, *Benitec*, 495 F.3d at 1345-48 (holding

the fact that declaratory judgment plaintiff may file a new drug application for potentially infringing pharmaceutical product in a few years "does not provide the immediacy and reality required for a declaratory judgment"); *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855-56 (Fed. Cir. 1999) (stating "an actual controversy cannot be based on a fear of litigation over future products" and holding that declaratory judgment plaintiff's "apprehension of being sued with regard to its new products 'in the pipeline,' but not advertised, manufactured, marketed, or sold before the filing date" provided no basis for declaratory judgment jurisdiction); *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059-60 (Fed. Cir. 1995) (holding that "[t]he residual possibility of a future infringement suit based on [declaratory judgment plaintiff's] future acts is simply too speculative a basis for jurisdiction over [declaratory judgment plaintiff's] counterclaim for declaratory judgments of invalidity"). RB Rubber's fear of litigation over future products does not preclude DRI's covenant not to sue from eliminating subject matter jurisdiction with respect to RB Rubber's declaratory claims.

Moreover, RB Rubber has not pointed to any potentially infringing products that are in the works or even alleged that it plans to produce such products. RB Rubber's mere speculation that it may produce infringing products and may face

suit by DRI for infringement in the future provides no basis for jurisdiction over its declaratory judgment counterclaims. *See Cat Tech LLC v. Tubemaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008) (holding that even after the Supreme Court's decision in *MedImmune*, "the issue of whether there has been meaningful preparation to conduct potentially infringing activity remains an important element in the totality of circumstances which must be considered in determining whether a declaratory judgment is appropriate").

Next, RB Rubber argues that DRI's withdrawal of its infringement claims and covenant not to sue are insufficient to eliminate subject matter jurisdiction because DRI does not state whether dismissal of its infringement claims is with or without prejudice. However, the Court will dismiss DRI's infringement claims with prejudice. Rule 41(a)(2) provides that "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." A motion for voluntary dismissal under Rule 41(a)(2) lies within the sound discretion of the district court. *Citizens Sav. Ass'n v. Franciscus*, 120 F.R.D. 22, 24 (M.D. Pa. 1988) (citing *Ferguson v. Eakle*, 492 F.2d 26, 28 (3d Cir. 1974)). "The purpose of the grant of discretion under Rule 41(a)(2) ... is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." Charles A. Wright & Arthur

R. Miller ("Wright & Miller"), 9 Fed. Prac. & Proc. Civ.2d § 2364 n.19 (collecting some of the "many, many cases" so holding).  Where, as here, the plaintiff fails to specify whether the request is for dismissal with or without prejudice, the court has discretion to grant a Rule 41(a) dismissal with prejudice, without prejudice, or to place conditions on dismissal.  *See Chodorow v. Roswick*, 160 F.R.D. 522, 523 (E.D. Pa. 1995); *Schandelmeier v. Otis Div. of Baker- Material Handling Corp.*, 143 F.R.D. 102, 102-03 (W.D. Pa. 1992); *Citizens Sav.*, 120 F.R.D. at 24; Wright & Miller § 2367.  In ruling on a motion to dismiss under Rule 41(a)(2), a court must examine the prejudice to the defendant, both in terms of legal prejudice and litigation expense.  *Schandelmeier*, 143 F.R.D. at 102-03.  Relevant factors in this analysis include (1) the excessive and duplicative expense of a second litigation; (2) the effort and expense incurred by the defendant in preparing for trial; (3) the extent to which the current suit has progressed; (4) the plaintiff's diligence in bringing the motion to dismiss and explanation therefore; and (5) the pendency of a dispositive motion by the non-moving party.  *Id.*; *Citizens Sav.*, 120 F.R.D. at 25.  Although the best precedent on this issue is of some vintage, the Third Circuit has taken a restrictive approach to granting dismissal without prejudice.  *Schandelmeier*, 143 F.R.D. at 103 & n.2.

In this case, these factors weigh heavily in favor of dismissing DRI's infringement claims with prejudice. This case has been pending for more than two years and nine months, and has progressed through a *Markman* hearing and decision and significant discovery. RB Rubber has incurred substantial expenses in conducting discovery and litigating this case. DRI has provided no explanation for the abrupt and belated withdrawal of its infringement claims, although the desire to avoid the adverse effects of the Court's claim construction and a potential ruling on the validity and enforceability of the '723 patent are plainly evident. Moreover, dismissal with prejudice is appropriate because DRI's covenant not to sue estops DRI from re-asserting its infringement claims against RB Rubber.[2] *See Sierra Applied Sciences, Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1375 (Fed. Cir. 2004) (holding that plaintiff's representations to the court that it would not sue defendant for certain allegedly infringing uses created an estoppel against plaintiff asserting such a suit). To allow DRI to re-assert its infringement claims in a future action would be futile. *See Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004). For these reasons, DRI's infringement claims will be dismissed with

---

[2] DRI may also face collateral estoppel effects of this Court's *Markman* order. *See Manders v. McGhan Medical Corp.*, 2006 WL 2372136, at *2 & n.1 (W.D. Pa. Aug. 15, 2006) (noting split between courts regarding collateral estoppel effect to be given to a *Markman* decision).

prejudice, and thus, RB Rubber's concern that these claims may be re-asserted in another action are alleviated.

In support of its arguments against dismissal, RB Rubber relies heavily on *FieldTurf USA , Inc. v. Sports Construction Group, LLC*, 507 F. Supp. 2d 801 (N.D. Ohio 2007), but this reliance is misplaced.  In that case, the patent owner, FieldTurf, brought claims alleging infringement of a patent for synthetic grass. FieldTurf alleged that the defendant, SCG, had installed infringing products at multiple locations.  SCG asserted counterclaims, including a request for a declaration of the patent's invalidity.  FieldTurf later withdrew its infringement claims and executed a covenant not to sue for infringement arising out of the SCG's actions at *one* of the multiple locations where SCG installed allegedly infringing product.  The court found that this covenant did not eliminate subject matter jurisdiction over SCG's counter-claims because while FieldTurf's complaint alleged that SCG offered to sell and installed infringing products at multiple locations, its covenant not to sue extended only to SCG's actions at one location. *Id.* at 807-08.  By contrast, in this case DRI has covenanted not to sue for infringement of the '723 patent "with respect to *any* of RB [Rubber]'s currently existing products or activities."  DRI's covenant precludes it from re-filing the

claims asserted in this case, and therefore, deprives the Court of jurisdiction over RB Rubber's counterclaims.

Next, RB Rubber argues that DRI's covenant is ineffective because it does not extend to customers, installers, suppliers, or others in the chain of commerce, and because DRI engaged in "scare-the-customer-and-run" tactics by notifying several of RB Rubber's customers about its infringement allegations.  In this regard, RB Rubber analogizes this case to *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007), but again this reliance is misplaced.  In that case, ST's vice president of intellectual property and licensing orally stated at a meeting with SanDisk's intellectual property counsel that "ST has absolutely no plan whatsoever to sue SanDisk."  *Id.* at 1376.  At the same meeting, however, ST brought two licensing attorneys and three experts it had retained to perform infringement analyses of SanDisk's products, and made a four-to-five hour presentation discussing ST's patents and SanDisk's "unlicensed activities" and "infringing" products.  *Id.*  Thereafter, ST continued to press for a licensing agreement between the two companies and implied that infringement litigation was possible absent such an agreement.  *Id.*  The Federal Circuit held that ST's course of conduct in approaching SanDisk, making a studied and considered determination of enforcement, and communicating that determination to SanDisk

15

had demonstrated a preparedness and willingness to enforce its patent rights, despite its vice president's statement to the contrary. *Id.* at 1382-83. The court held that ST's actions had vitiated the effect of its oral covenant, and therefore, subject matter jurisdiction remained over SanDisk's declaratory judgment claims. *Id.* at 1383. In its later decision in *Benitec*, the Federal Circuit interpreted its *SanDisk* decision as making a distinction between intentions and promises, noting that ST "only stated that it did not *intend* to sue SanDisk; it did not say it *would not* sue SanDisk in the future for its alleged infringement." *Benitec*, 495 F.3d at 1347 (emphasis in original).

In summary, the covenant not to sue at issue in *SanDisk* did not eliminate subject matter jurisdiction over declaratory judgment claims of invalidity because (1) ST's course of conduct belied its covenant not to sue, (2) ST persisted in threatening to enforce its patent rights after stating that it would not to do so, and (3) ST's conveyed only its intention not to sue, rather than a promise not to do so. None of these circumstances are present in the this case. DRI's conduct is consistent with its promise not to sue, DRI has withdrawn its infringement claims, and DRI has given an unequivocal covenant not to sue RB Rubber for infringement. *SanDisk* is readily distinguishable from this case.

Moreover, RB Rubber's argument that declaratory jurisdiction may be based on potential suits against customers, installers, or suppliers suffers from the same defect as its argument that jurisdiction may be based on its own fear of future suit: potential future infringement suits are simply too speculative to provide the immediate controversy necessary to justify a declaratory judgment. *See Benitec*, 495 F.3d at 1345-48. Further, even a currently pending suit between DRI and a customer, installer, or supplier would not constitute a substantial controversy between DRI and *RB Rubber* to warrant a declaration of the rights of those two parties. *See Teva Pharm. Inds. Ltd. v. Dr. Reddy's Lab., Ltd.*, 2008 WL 630050, at *4 (D.N.J. Mar. 5, 2008) (holding that suit between declaratory judgment defendant and customer of declaratory judgment plaintiff did not provide sufficient grounds for declaratory judgment jurisdiction).

Next, RB Rubber asserts that the covenant does not extend to all allegedly infringing products. The Court disagrees. The covenant precludes DRI from bringing suit for infringement of the '723 patent "with respect to *any* of RB [Rubber]'s currently existing products or activities." "Any" plainly means any. To the extent that RB Rubber means to argue that the covenant does not extend to products it may produce in the future, this argument is rejected for the reasons discussed above.

17

Finally, RB Rubber argues that the covenant should not divest the Court of jurisdiction because it does not extend to DRI's reissue application currently pending before the Patent Office.  RB Rubber relies on the principle that a finding of unenforceability in this proceeding would extend to the reissue application.  *See Hoffman-La Roche Inc. v. Lemmon Co.*, 906 F.2d 684, 688 (Fed. Cir. 1990).  This argument, however, puts the cart before the horse.  RB Rubber is likely correct that a finding of inequitable conduct here would make reissue unavailable to obtain new claims and thereby rehabilitate the patent.  But the Court is without subject matter jurisdiction to make such a finding, and the mere fact that this Court's ruling may have preclusive effect elsewhere does not provide a basis for such jurisdiction.  As DRI correctly notes, the Federal Circuit has repeatedly affirmed dismissals on the basis of covenants not to sue in the face of potential reissue of a patent.  *See, e.g.*, *Benitec*, 495 F.3d at 1342 (holding covenant not to sue eliminated declaratory judgment jurisdiction despite pending reexamination of patent); *Amana Refrigeration*, 172 F.3d at 856 (rejecting argument that covenant subjected declaratory judgment plaintiff to risk of further litigation because of the potential grant of a reissue patent and stating "the future existence of a reissue patent is wholly speculative and, therefore, cannot create a present controversy").

DRI's withdrawal of its infringement claims and covenant not to sue RB Rubber for infringement of the '723 patent have eliminated any substantial, immediate controversy between the parties, and thereby also eliminated this Court's jurisdiction over RB Rubber's counterclaims for the invalidity and unenforceability of the '723 patent.  As at least one judge of the Federal Circuit has recognized that "it may seem unfair to allow a patentee to first proceed with its infringement claim and then, if the result is not favorable, eliminate the court's jurisdiction over the accused infringer's counterclaim by covenanting not to sue the accused infringer.  Fairness is not part of the jurisdictional inquiry, however." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1354-55 (Fed. Cir. 2005) (Schall, J. dissenting).  DRI's infringement claims will be dismissed with prejudice, and because this Court lacks subject matter jurisdiction over RB Rubber's counterclaims, these claims must also be dismissed.

### C.   RB Rubber's Claims of Inequitable Conduct

RB Rubber argues that even if DRI's infringement claims are dismissed with prejudice and the covenant not to sue eliminates jurisdiction over its declaratory judgment counterclaims, the Court still retains jurisdiction to address inequitable conduct in evaluating a motion for attorneys fees.  A recent decision by the Federal Circuit demonstrates that RB Rubber's argument is correct.

Title 35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  One of the ways a prevailing party may prove an exceptional case is by showing inequitable conduct before the PTO.[3]  *See Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1358 (Fed. Cir. 2008).  Thus, a "district court's jurisdiction to rule on attorney fees encompasse[s] the jurisdiction to make findings of inequitable conduct." *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1242 (Fed Cir. 2008).  The Federal Circuit's recent decision in  *Monsanto* makes clear that a court's jurisdiction under § 285 to determine whether there was inequitable conduct in the prosecution of a patent continues even after claims regarding that patent are no longer before the court.

In that case, Monsanto filed a declaratory judgment action seeking a declaration that its products did not infringe four of Bayer's patents relating to the expression of certain chimeric genes in plants – the '565, '372, '546, and '799 patents – and a declaration that these patents were invalid and unenforceable. Bayer counterclaimed for the infringement of each patent.  However, Bayer eventually dismissed all claims that Monsanto infringed the '372, '546, and '799

---

[3] Of course, a party moving for fees under § 285 must demonstrate that it is a "prevailing" party.  *See, e.g.*, *Highway Equipment Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1034-35 (Fed Cir. 2006) (holding that dismissal with prejudice under Rule 41(a)(2) based on a covenant not to sue may establish defendant's prevailing party status under § 285).

patents and covenanted not to sue Monsanto for infringement of those patents.  The case proceeded to trial, at which the jury found the '565 patent not infringed and invalid for obviousness and prior invention.  After a further bench trial, the district court found inequitable conduct in the prosecution of the '565 patent, as well as the '372, '546, and '799 patents, and held all four of the patents to be unenforceable on that basis.  On appeal, Bayer argued, *inter alia*, that the district court lacked jurisdiction to find the '372, '546, and '799 patents unenforceable.

The Federal Circuit rejected this argument, noting that even if Bayer's covenant not to sue for infringement of the '372, '546, and '799 patents divested the district court of jurisdiction over a declaratory judgment action regarding these patents, the district court retained jurisdiction over Monsanto's request for attorney's fees under § 285.  *Id.* at 1242.  The court held that "a district court's jurisdiction under § 285 to determine whether there was inequitable conduct in the prosecution of patents that are otherwise no longer in suit confers on that court the jurisdiction to hold such patents unenforceable for inequitable conduct."  *Id.* at 1243.  The court reasoned that "[a] district court has no discretion to decide whether a patent is unenforceable once it enters a finding of inequitable conduct.  To the contrary,  ... the unenforceability of a patent follows automatically once a patent is found to have been obtained via inequitable conduct....  As a result,

jurisdiction to decide whether a patent was obtained through inequitable conduct necessarily includes the jurisdiction to declare a patent unenforceable as a result of that inequitable conduct." *Id.*

In this case, although the dismissal of DRI's infringement claims and DRI's covenant not to sue divest the Court of jurisdiction over RB Rubber's declaratory judgment counterclaims, the Court retains jurisdiction to consider a motion for attorney's fees by RB Rubber under § 285.  In support of that motion, RB Rubber may attempt to prove this is an exceptional case warranting an award of attorney's fees by showing inequitable conduct in the prosecution of the '723 patent, and the Court has jurisdiction to make a finding of inequitable conduct which would necessarily result in the unenforceability of that patent.[4]  Therefore, although DRI's infringement claims will be dismissed under Rule 41(a)(2) and RB Rubber's counterclaims will be dismissed for lack of jurisdiction, the Court will grant RB Rubber fourteen days in which to file a motion for attorney's fees under § 285.  *See* Fed. R. Civ. P. 54(d)(2); *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d

---

[4] However, the Court retains jurisdiction to determine the attorney's fees question only to the extent that DRI has not or does not offer to pay RB Rubber's fees.  *See Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 523 F.3d 1374, 1379-80 (Fed. Cir. 2008) (holding that an offer to pay the entire amount of attorneys fees in dispute mooted fees issue and divested district court of jurisdiction to issue further opinions in conjunction with § 285 motion).

1377, 1386 (Fed Cir. 2005) (holding that any claim to attorney's fees under § 285 must be processed in compliance with Rule 54(d)(2)(B)).[5]

## III.   CONCLUSION

For the foregoing reasons, RB Rubber's motion to docket its second amended answer and counterclaims will be granted.  The Court will direct that submission to be docketed and will deem it the operative pleading in this action.

DRI's motion to dismiss will also be granted.  DRI's infringement claims will be dismissed with prejudice under Rule 41(a)(2).  RB Rubber's counterclaims (as asserted in its second amended answer and counterclaims) will be dismissed without prejudice for lack of subject matter jurisdiction.  *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155-56 (3d Cir. 1997) (holding dismissal for lack of subject matter jurisdiction is without prejudice).

Finally, RB Rubber will be granted leave to file a motion for attorney's fees under 35 U.S.C. § 285 within fourteen days of the date of this memorandum and order.  An appropriate order shall be entered.

---

[5] Before the expiration of this fourteen-day period, RB Rubber may file a motion showing good cause for an extension of time in which to file its attorney's fees motion.  *See* Fed. R. Civ. P. 6(b); *IPXL Holdings*, 430 F.3d at 1385-86.