**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DODGE-REGUPOL, INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:06-CV-00236 |
| | ) | (The Hon. John E. Jones, III) |
| v. | ) | |
| | ) | |
| RB RUBBER PRODUCTS, INC., | ) | [FILED ELECTRONICALLY] |
| | ) | |
| Defendant | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO REOPEN DISCOVERY**

Plaintiff Dodge-Regupol, Inc. ("DRI") (n/k/a ECORE International) respectfully submits this memorandum in support of its motion to reopen discovery prior to the upcoming trial on DRI's motion to strike and for sanctions (Dkt. 121) and defendant RB Rubber Products, Inc.'s ("RB") Motion for Attorney's Fees and Costs (Dkt. 106). As explained more fully below, the Court should reopen discovery because 1) there was never an inequitable conduct claim on file while discovery was open; 2) many of the documents and all of the witnesses that RB relies on were not disclosed to DRI until after the close of discovery; and 3) reopening discovery will partially ameliorate the effects of RB's failure to plead inequitable conduct with particularity, assuming *arguendo*, that the Court does not dismiss RB's motion for attorney's fees due to its failure to plead inequitable conduct with particularity.

**BACKGROUND**

To understand why additional discovery is needed, it is necessary to briefly discuss the procedural background of this case. RB filed a motion to file a second amended answer, which included counterclaims for inequitable conduct, on January 2, 2008. Dkt. 76. The Court granted RB's motion on January 8, 2008, and ordered RB to file its amended answer by no later than

January 28, 2008. Dkt. 80. RB, however, did not file its second amended answer. Thereafter, new counsel for DRI recognized that damages would be very limited due to the Court's *Markman* order; consequently, DRI moved to dismiss the case on May 30, 2008. DRI filed the motion because it was seeking a broader reissue patent and also to provide the USPTO with the additional prior art that RB had identified. Dkt. 85; Dkt. 86 at 2. On June 24, 2008, RB opposed DRI's motion and filed another motion to file its second amended answer. Dkt. 91; Dkt. 92. On July 21, 2008, DRI filed its reply in support of its motion and its opposition to RB's motion. Dkt. 96. In its opposition, DRI explained that RB's claim for inequitable conduct was not proper because it failed to plead inequitable conduct with particularity and that if RB had filed its second amended answer, DRI would have filed "a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) because RB **did not plead counterclaims 3 and 4 with particularity**." *Id.* at 3 (emphasis added). On November 12, 2008, the Court granted DRI's motion to dismiss, but it also granted RB's motion to file the second amended answer, which it immediately dismissed, and it allowed RB to seek its attorney's fees based on RB's allegation that DRI committed inequitable conduct. Dkt. 98. The Court did not address whether RB had pled inequitable conduct with particularity.

The rather tortured procedural history here demonstrates two undisputable facts: 1) there was never a claim for inequitable conduct while discovery was ongoing, and 2) by granting RB's motion to file its second amended answer and then immediately dismissing the counterclaims in its answer, DRI was deprived of its right to file a motion to dismiss the counterclaims for failing to plead inequitable conduct with particularity. That motion, if granted, would have precluded RB from seeking attorney's fees based on DRI's alleged inequitable conduct. *See Sony Elecs., Inc. v. Soundview Techs.*, 375 F. Supp. 2d 99, 102 (D. Conn. 2005) (inequitable conduct cannot be added back as a basis for attorney's fees). Thus, if the Court does not dismiss the claim for

attorney's fees because RB failed to plead inequitable conduct with particularity, at the very least, it should reopen discovery to allow DRI its *first chance* to take discovery on RB's claim of inequitable conduct.

There are currently two motions pending before the Court: RB's motion for attorney's fees and DRI's motion to strike the evidence submitted with that motion. Additional discovery is necessary for both motions. First, regarding DRI's motion to strike, RB has attempted to excuse its failure to comply with its Rule 26 obligations because it allegedly only received certain evidence it used to support its motion on December 11, 2008, a mere eight days before it filed that motion. Dkt. 129 at 9. The Court should allow DRI to take discovery to further prove that RB's excuse is baseless.

Second, RB's motion for attorney's fees has consequences far beyond that limited issue. Specifically, if the Court grants the motion, the result would be to have DRI's patent, and perhaps all related patents such as the reissue patent, declared unenforceable. Because RB's motion is based on alleged inequitable conduct committed by DRI during the prosecution of the 6,920,723 patent, ("the '723 patent"), if the Court finds that DRI committed inequitable conduct, "the entire patent is rendered unenforceable." *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 877 (Fed. Cir. 1988). A finding of inequitable conduct is much more serious to a patent holder than a finding of invalidity because a "validity analysis must be conducted on a claim-by-claim basis." *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1334 (Fed. Cir. 2004). Moreover, even if every claim of a patent is found invalid, those findings ***do not*** have any impact on any future patent or patent application that claims priority from that patent. But "a finding of inequitable conduct" leads to a "severe" "penalty, . . . the loss of the entire patent even where every claim clearly meets every requirement of patentability." *Star*

3

*Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008). Therefore, if a court were to find inequitable conduct regarding a single claim of a patent, not only must the court find that claim unenforceable, but all the other claims would also be unenforceable. *Id.* Moreover, any patent or patent application that claims priority from that patent may also be declared unenforceable. *Abbott Labs. v. Sandoz, Inc.*, 500 F. Supp. 2d 807, 819 (N.D. Ill. 2007) (unenforceability of a parent patent may, depending on the circumstances, lead to a finding that the child patent is also unenforceable). Thus, the fact that a patentee may have to pay its opponent's attorney's fees if a court finds inequitable conduct, may be of much less importance than the fact that a court must declare all claims of the patent unenforceable and may declare other patents and patent applications that claim priority from that patent unenforceable.

Due to the draconian nature of a finding of inequitable conduct, the Federal Circuit requires inequitable conduct to be pled with particularity. This is most clearly shown by *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009), which was released after the completion of briefing of the two pending motions. The Federal Circuit held that the extensive allegations in *Exergen* were insufficient to plead inequitable conduct with particularity because "in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."[1] *Id.* at 1327. In addition, to properly plead intent "requires that the pleadings

---

[1] In *Exergen*, these allegations were insufficient to plead inequitable conduct with particularity:

> Exergen was aware of the '808 patent well before the '685 patent issued on September 18, 2001. The '808 patent was material to the patentability of the '685 patent because it discloses a technique of scanning a radiation detector across a target to measure the maximum emitted radiation, and it is not cumulative.
> . . .
> Exergen was aware of the '998 patent well before the '685 patent issued on September 18, 2001. The '998 patent was material to the patentability of the '685

4

allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id.*

The Court's decision on whether RB pled inequitable conduct with particularity may greatly reduce or eliminate the need for discovery in this case.[2] Whether RB pled inequitable conduct with particularity is purely a legal issue, and nothing in the upcoming hearing will be

---

> patent because it discloses a technique of swiping a radiation detector across a target, and it is not cumulative.
>
> . . .
>
> SAAT is informed and believes, and therefore alleges, that Exergen, its agents and/or attorneys intentionally withheld the '808 patent and the '998 patent from the PTO with the intent to deceive the PTO to issue the '685 patent.
>
> . . .
>
> [D]uring the prosecution of the '685 patent application, Exergen made a number of arguments to the PTO to overcome rejections of the pending claims based upon various prior art references related to tympanic temperature detectors. For example, [discussing a specific argument made to the PTO].
>
> . . .
>
> These arguments made to the PTO were contradicted by statements from Exergen's own website, such as the following statement . . . The temporal artery area has a long history of temperature measurement, dating back to the early centuries before Christ with the first recorded references to palpation of the head for fever assessment.
>
> [] Thus, while Exergen acknowledged on its website that the temporal artery has a long history of temperature measurement, Exergen misrepresented to the PTO that no such history existed and omitted any reference to the website. The misrepresentation and omission were material to the patentability of the '685 patent because the information was not cumulative . . . . SAAT is informed and believes, and therefore alleges, that the misrepresentation and omission were made with the intent to deceive the PTO to issue the '685 patent.

*Exergen*, 575 F.3d at 1325-26 (quoting the complaint).

[2] In view of the fact that the rather extensive pleadings in *Exergen* were insufficient to plead inequitable conduct with particularity, RB's pleading here certainly fails to plead inequitable conduct with particularity. *See* Dkt. 122 at 2-4 (demonstrating that RB's two sentence allegation failed to plead inequitable conduct with particularity). Not only did RB fail to properly plead the "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO," but it made no attempt to properly plead intent because it pled no facts whatsoever to "allege sufficient underlying facts from which [this C]ourt may reasonably infer that [Downey or Dodge] acted with the requisite state of mind." *Exergen*, 575 F.3d at 1327.

5

relevant to the Court's ruling on this issue. Therefore, the Court will save its resources and those of the parties if the Court decides that issue prior to deciding this motion.[3]

Obviously, if the Court dismisses RB's motion in its entirety, DRI's motion to strike RB's evidence will become moot, this motion would also become moot, this case will be over and there will be no need for a hearing. Even if the Court does not dismiss RB's motion in its entirety, but instead allows RB to only proceed on its claim for attorney's fees based on DRI's alleged litigation misconduct, the amount of discovery that DRI will need will be drastically reduced because it will only need discovery related to the parties' competing claims of litigation misconduct (DRI will also not need to designate a rebuttal patent law expert as discussed *infra*).

## ARGUMENT

As DRI explained in its motion to strike, most of the documents that RB relies on in support of its motion for attorney's fees were not produced during discovery. Moreover, because RB never complied with the Court's order to file its amended counterclaims, DRI never had the opportunity to either seek dismissal for failure to plead with particularity, or obtain discovery concerning the inequitable conduct counterclaims. In addition, none of the witnesses upon which RB now relies were identified by RB during discovery.

Consequently, the Court should reopen discovery because DRI has shown that there is "good cause" for why it could not complete discovery according to the Court's schedule. Here, because DRI did not know about most of the documents or any of the witnesses upon which RB relies, it would have been impossible for DRI to complete its discovery prior to the Court's discovery deadline. *See Teitelman v. Harold S. Wooden, Jr., Inc.*, 2000 U.S. Dist. LEXIS 15469,

---

[3] The parties have estimated that the total cost to the parties of the hearing will be on the order of $600,000, and that does not include the costs for additional discovery. *See* Sept. 23, 2009 E-mail from Wool to Dodge (Exh. 1).

*2 (E.D. Pa. Oct. 24, 2000) (discovery should be reopened when "a more diligent pursuit of discovery was impossible"); *Welton v. Conrail*, 1993 U.S. Dist. LEXIS 138, *3 (E.D. Pa. Jan. 4, 1993) (same). It would be inherently unfair to allow RB now to proceed to trial by ambush without giving DRI a chance to depose RB's witnesses before trial and to take written discovery related to the documents upon which RB intends to rely. *See Paris v. Union Pac. R.R. Co.*, 450 F. Supp. 2d 913, 916 (E.D. Ark. 2006) (reopening discovery after one party disclosed new witnesses so the witnesses could be deposed and the other party could identify new witnesses if needed). Indeed, courts have offered to reopen discovery, even when information was disclosed during discovery, but close to the discovery deadlines. *See, e.g., Cornell Research Found., Inc. v. Hewlett-Packard Co.*, 2006 U.S. Dist. LEXIS 97054, *58 (N.D.N.Y Nov. 13, 2006) (for the sake of "fundamental fairness," the court would "look favorably" upon a request "to reopen discovery . . . for the limited purpose of addressing" the late produced discovery).

Assuming that the court does not dismiss RB's motion for attorney's fees because RB did not plead inequitable conduct with particularity despite the recently issued *Exergen* decision, the Court should at least ameliorate the effects of its decision by allowing DRI to take discovery. The discovery that DRI seeks is limited to two main areas: (1) document discovery related to communications between RB and its counsel, RB and BSW, RB and its expert Mr. Manbeck (along with all documents Mr. Manbeck considered when drafting the declarations he previously attached), and RB's alleged damages; and 2) depositions of all witnesses who RB will call at trial and a 30(b)(6) witness to answer questions related to (1) above.[4]

Finally, DRI notes that the parties have previously agreed that if the Court reopened discovery, all discovery must be completed within three months.

---

[4] BSW is the German company that employs Breuer and Beitzel, two of RB's declarants.

7

I.  **THE COURT SHOULD REOPEN DISCOVERY TO ALLOW DRI TO TAKE LIMITED DOCUMENT DISCOVERY**

   A.  **The Court Should Allow DRI to Take Document Discovery Related to All Communications Between RB and Its Counsel That Are Related to the Two Pending Motions Because RB Waived the Attorney/Client Privilege**

RB waived the attorney/client privilege for all communications between RB and its counsel that are related to the two pending motions. Communications between counsel and their clients are normally protected from discovery by the attorney/client privilege, but that privilege may be waived. Such a waiver goes "to all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005).

On September 23, 2009, RB's CEO (Sandy Wool) forwarded to DRI's CEO (Art Dodge) communications he had received from his in-house counsel that discussed the alleged strength of RB's claim for attorney's fees, DRI's motion to strike, and RB's alleged claims for antitrust violations. Exh. 1. This document is an attorney/client communication, and RB waived its privilege by intentionally forwarding the document to DRI's CEO. *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1424 (3d Cir. 1991) ("it is well-settled that when a client voluntarily discloses privileged communications to a third party, the privilege is waived"). Apparently, RB forwarded the document because it hoped that by sharing with DRI its attorney's views of the purported strengths of RB's case, DRI would be willing to capitulate to RB's demands. But, if that was RB's intent, it made a major strategic error: rather than strengthening its case, this document is further evidence that RB committed litigation misconduct.

In its opposition to RB's motion for attorney's fees, DRI explained that RB was improperly "asking the Court to do something that apparently has *never* been done before by *any* court: to enter a finding of inequitable conduct without a trial or even a grant of summary

8

judgment on the issue." Dkt. 122 at 6 (emphasis in original). RB claimed to disagree arguing that "there must be a procedural mechanism for consideration of a fee motion absent a trial, and *of course, there is*." Dkt. 132 at 10 (emphasis added). Based on its argument that a trial on the inequitable conduct issue was not necessary, "RB Rubber request[ed] that the Court enter a finding of inequitable conduct, declare this case exceptional under 35 U.S.C. § 285, declare that Dodge-Regupol engaged in litigation misconduct, and award RB Rubber its fees and costs and find the '723 patent unenforceable." *Id.* at 25.

But while RB was representing to the Court that it could grant RB the relief it sought without a hearing, RB's counsel admitted that RB knew that "if the Court was inclined to rule against our motion, it could do so *with little risk of overturn on appeal* simply on the briefs." Exh. 1 (emphasis added). Even worse, RB's counsel stated that "*we have believed for months that a hearing would be necessary to withstand appellate attack*." *Id.* (emphasis added). The fact that RB represented to the Court an argument that it knew was not "warranted by existing law or by a nonfrivolous argument for . . . reversing existing law" because its argument could not "*withstand appellate attack*" is further evidence of RB's litigation misconduct, and thus this document is highly relevant to the pending motions. *See* Fed. R. Civ. P. 11(b)(2).

In addition, for the purposes of this motion, there can be no question that RB has attempted to use its attorney/client communication as a sword in an attempt to convince DRI to capitulate to its demands. Thus, because RB has used this attorney/client communication as a sword, it can no longer use the attorney/client communication privilege as a shield to protect its communications, and the Court should require RB to produce all "communications relating to the same subject matter." *Fort James Corp.*, 412 F.3d at 1349. As the Federal Circuit explained "[t]he waiver extends beyond the document initially produced out of concern for fairness, so that

a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Id.*

Thus, the only question is the "subject matter" of the document. The subject matter of the document includes: RB's allegation of inequitable conduct, RB's claim for attorney's fees, RB's concealment of evidence, DRI's motion to strike, DRI's request for attorney's fees, RB's alleged antitrust claims, and RB's alleged damages. *See* Exh. 1. Accordingly, the Court should require RB to produce all attorney/client communications addressing those topics.

### B. The Court Should Allow DRI To Take Document Discovery Related to All Communications Between RB and BSW

DRI's motion to strike is based, *inter alia*, on RB's failure to produce documents it received from BSW, and its failure to identify the two BSW witnesses prior to the filing of RB's motion. In its opposition, RB attempted to excuse its failure to supply that clearly relevant information because it alleged that it only became aware of most of the documents and the BSW witnesses shortly before it filed its motion. Dkt. 129 at 9. The Court should allow DRI to take discovery on that issue so that it can demonstrate the falseness of RB's allegations. Further, RB has even boasted that it has "ample evidence to produce for the Court demonstrating that [it did not conceal evidence.]" Exh. 1. The Court should require RB to produce that alleged "ample evidence" to DRI. Thus, the Court should require RB to produce all communications between it and BSW from the time of the first communication regarding this case.

### C. The Court Should Allow DRI To Take Document Discovery Related to All Communications Between RB and Mr. Manbeck

Mr. Manbeck's declarations go exclusively to alleged inequitable conduct committed by DRI. Therefore, if the Court dismisses RB's claim for attorney's fees based on DRI's alleged inequitable conduct, this request for discovery related to Mr. Manbeck will be moot.

10

Fed. R. Civ. P. 26(a)(2)(B)(ii) requires an expert to disclose all "information considered by the [expert] in forming [his opinions]." Although Mr. Manbeck did supply a list of some information he considered in forming the opinions in his original declaration, he included no such list with his second declaration (other than incorporating by reference the exhibits listed in his first declaration). Federal Rule 26 "require[s] disclosure of all information, whether privileged or not, that a testifying expert generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if the testifying expert ultimately rejects the information." *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 464 (E.D. Pa. 2005). Accordingly, DRI is "entitled to any 'data or other information that was considered' by [Manbeck] in forming his opinions, including attorney-expert communications." *Schwarz & Schwarz of Va. L.L.C. v. Certain Underwriters*, 2009 U.S. Dist. LEXIS 33019, *24 (W.D. Va. Apr. 16, 2009). Consequently, the Court should allow DRI to receive written discovery regarding all "information considered" by Mr. Manbeck in forming the opinions stated in both of his declarations.

        **D.**        **DRI Should Be Allowed to Take Discovery Related to RB's Attorney's Fees**

RB is seeking hundreds of thousands of dollars in attorney's fees. But RB has supplied no discovery to justify its claim for attorney's fees. Once again, rather than comply with its Rule 26 obligation and provide copies "of all documents . . . that [it] has in its possession . . . [that] it may use to support its claim," RB is attempting to engage in trial by ambush. Therefore, the Court should allow DRI to take discovery from RB regarding its alleged damages. *See Microsoft Corp. v. Fed. Ins. Co.*, 2003 U.S. Dist. LEXIS 27453, *9 (W.D. Wash. Feb. 14, 2003) (requiring party seeking attorney's fees to produce all invoices plus "the underlying time sheets, time records, work-in-progress summaries, etc.").

## II.   THE COURT SHOULD ALLOW DRI TO TAKE A LIMITED NUMBER OF DEPOSITIONS

In its motion for attorney's fees, RB submitted declarations from three witnesses, none of whom it had previously identified as potential witnesses to DRI. If the Court denies DRI's pending motion to strike and allows these three witnesses to testify, the Court at least should reopen discovery to allow DRI to take the depositions of these witnesses.

Although discovery closed on August 15, 2008, RB failed to identify any of these witnesses to DRI until it filed its motion for attorney's fees on December 19, 2008. The only "disclosure" that RB made in this case was in May, 2008, when it informed DRI that Mr. Manbeck agreed to be bound by the protective order. Dkt. 129 Exh. 3. But RB did not inform DRI whether Mr. Manbeck's role in the case would be as a testifying expert (who may be deposed) or a non-testifying expert (who may not be deposed). In addition, even if RB had disclosed Mr. Manbeck as a testifying expert, DRI could still have not deposed him because testifying experts may not be deposed "until after [his expert] report [was] provided." Fed. R. Civ. P. 26(b)(4)(A). Thus, it was impossible for DRI to take Mr. Manbeck's deposition before discovery was closed. *See Enron Corp. Sec. v. Enron Corp.*, 2007 U.S. Dist. LEXIS 98619, *133 (S.D. Tex. Feb. 1, 2007) (reopening discovery to allow deposition of an expert who submitted a supplemental expert report before the close of discovery but after the deadline for expert reports and to allow the opposing party the opportunity to submit a supplemental expert report). Accordingly, as DRI had no opportunity to depose Mr. Breuer, Mr. Beitzel (because it had no idea that RB would be calling these former directors of DRI as witnesses), or Mr. Manbeck, the Court should reopen discovery to allow DRI to take these depositions. *See Fleming v. Verizon N.Y. Inc.*, 2006 U.S. Dist. LEXIS 68632, *26 n.4 (S.D.N.Y. Sept. 22, 2006)

(only allowing late identified witnesses to testify after opponent was given the "opportunity to take additional discovery of [those] witnesses [prior to] trial").

Finally, DRI should also be given the opportunity to take a 30(b)(6) deposition regarding the discovery it is requesting here. Much of the discovery it seeks may not be available in written form. For example, communications between RB and BSW may include non-written communications. As RB is relying on that communication (or lack of the same) as its excuse for violating its Rule 26 obligations and not disclosing BSW's documents and witnesses to DRI, the Court should allow DRI to investigate those communications. Similarly, the alleged reasonableness of attorney's fees may not be apparent from documents. Thus, the Court should allow a 30(b)(6) deposition to address these topics. *See Hi Ltd. P'ship v. Winghouse of Fla., Inc.*, 2004 U.S. Dist. LEXIS 30687, *38-37 (M.D. Fla. Oct. 5, 2004) (reopening discovery to allow a 30(b)(6) deposition on "the attorneys' fees . . . incurred in defense of [the] case").

## III. THE COURT SHOULD REOPEN DISCOVERY TO ALLOW DRI TO IDENTIFY ADDITIONAL FACT WITNESSES AND A REBUTTAL EXPERT WITNESS TO ADDRESS RB'S INEQUITABLE CONDUCT CLAIM

If the Court does not dismiss RB's deficiently pled inequitable conduct claim, DRI requests that the Court reopen discovery to allow DRI to identify certain fact witnesses and an expert witness to rebut RB's spurious claim of inequitable conduct.

RB, after the close of discovery, made the baseless claim in its motion for attorney's fees that the invention described in the '723 patent was on sale for years before Mr. Downey patented the invention. DRI has now identified several individuals who will testify that RB's claim is demonstrably false. As DRI was hamstrung in its ability to defend against RB's claim of inequitable conduct because RB did not plead inequitable conduct with particularity, it would be grossly unjust to further restrict DRI's ability to defend itself by not allowing DRI to produce

13

rebuttal witnesses to RB's false accusations that it first made after the close of discovery. *See Paris v. Union Pac. R.R. Co.*, 450 F. Supp. 2d 913, 916 (E.D. Ark. 2006) (reopening discovery after one party disclosed new witnesses so that the other party could, *inter alia*, identify new rebuttal witnesses). DRI will, of course, agree to produce these new witnesses for deposition if the Court grants DRI's request to reopen discovery.

Finally, the Court should allow DRI to identify Mr. Nick Godesi as a rebuttal expert witness. After the close of all discovery, including expert discovery, RB submitted two declarations by Mr. Manbeck in support of its motion for attorney's fees. RB alleges that Mr. Manbeck is a patent law expert who can provide testimony on whether unsubmitted art would be considered material by the patent office. Considering that one court refused to consider Mr. Manbeck's testimony because of "Manbeck's willingness when formulating his opinions to repeatedly disregard the well-established law on materiality," *Frazier v. Roessel Cine Photo Tech, Inc.*, 2003 U.S. Dist. LEXIS 19607, *83 (C.D. Cal. Apr. 9, 2003) *aff'd in part, rev'd in part*, 417 F.3d 1230 (Fed. Cir. 2005), it would be manifestly unjust not to allow DRI to put forward a rebuttal expert to explain how Mr. Manbeck is "repeatedly disregard[ing] the well-established law on materiality" in this case. *See also Energy Absorption Sys. v. Roadway Safety Serv.*, 1996 U.S. Dist. LEXIS 20380, *24 (N.D. Ill. Feb. 16, 1996) ("[Mr. Manbeck] offers a variety of views and opinions, some of which are ridiculous on their face and others of which are clearly contradicted by other evidence.").

"The Third Circuit has repeatedly emphasized the liberal policy applied to admissibility of expert testimony." *Merisant Co. v. McNeil Nutritionals, LLC*, 515 F. Supp. 2d 509, 541 (E.D. Pa. 2007) (internal quotation omitted). When a party designates an expert late, courts have regularly reopened or extended discovery to allow the opposing party to designate a rebuttal

expert. *See, e.g., Teitelman v. Harold S. Wooden, Jr., Inc.*, 2000 U.S. Dist. LEXIS 15469 *3-*4 (E.D. Pa. Oct. 24, 2000) (late designation of an expert witness can "be cured by granting Defendants' a brief period of time to obtain their own rebuttal expert witness"). Indeed, one court explicitly stated that because "the federal rules do not support trial by ambush" it would extend discovery to allow "rebuttal experts [to] be named, and their depositions taken." *Bennett v. CSX Transp., Inc.*, 2006 U.S. Dist. LEXIS 66962, *8 (N.D. Ga. Sept. 19, 2006). Accordingly, the Court should allow DRI to identify Mr. Godesi as a rebuttal expert. Should the Court grant DRI's motion, DRI will provide RB with Mr. Godesi's declaration pursuant to Rule 26 of FRCP and make him available for deposition.

## CONCLUSION

Because DRI had no opportunity to seek dismissal of RB's deficiently pled counterclaims and no opportunity to take discovery regarding those counterclaims, DRI respectfully requests the Court to grant this motion.

Respectfully submitted,

Dated:  October 16, 2009                             By:  s/ Joseph Wolfson
                                                                             Joseph Wolfson, Esq.
OF COUNSEL:                                                 STEVENS & LEE P.C.
William T. Enos, Esq.                                       620 Freedom Business Center
Robert C. Nissen, Esq.                                     Suite 200
OBLON, SPIVAK, McCLELLAND                  P.O. Box 62330
  & NEUSTADT, L.L.C.                                     King of Prussia, PA  19406
 1940 Duke Street                                              Tel:  (610) 205-6019
 Alexandria, VA  22314                                    Fax:  (610) 988-0808

                                                                             *Attorneys for Plaintiff*
                                                                             *Dodge-Regupol, Incorporated*
                                                                             (*n/k/a ECORE International*)