**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DODGE-REGUPOL, INC.** | : | **Civil No. 3:06-CV-236** |
| | : | |
| **Plaintiff,** | : | **(Jones, J.)** |
| | : | |
| **v.** | : | **(Carlson, M.J.)** |
| | : | |
| **RB RUBBER PRODUCTS, INC.** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION AND ORDER

**I     INTRODUCTION**

In this case we are called upon to resolve competing claims for attorneys' fees.[1]

These attorneys' fee applications are made against the backdrop of a hotly contested

patent case, involving technological advances in the commercial flooring industry.

These fees petitions also expose an acrimonious dispute between former joint

venturers in this industry, erstwhile partners who now find themselves on opposite

sides of this large-scale fees contest. Moreover, in this case we are presented with a

---

[1]Pursuant to 28 U.S.C. § 636(b)(1)(A), this court is authorized to rule upon post-judgment attorney fee and sanctions disputes like those presented in this case. See, e.g., Merritt v. Int'l. Brotherhood of Boilermakers, 649 F.2d 1013 (5th Cir. 1981); Temple v. WISAP USA in Texas, 152 F.R.D. 591 (D.Neb. 1993)

fees dispute which has taken on a life of its own, and has endured long after the merits of the underlying patent case were resolved by the parties.

The resolution of such fee disputes rests in the sound discretion of the court, which must weigh a host of legal and equitable considerations in making a determination regarding whether to deviate from the longstanding "American Rule" that each party normally bears its own fees and costs. Having conducted this assessment, we will decline the parties' competing invitations to depart from this general rule, and shift attorneys' fees. Although the actions of Dodge-Regupol may permit a reasonable inference that the plaintiff engaged in inequitable conduct when applying for this patent, the proper exercise of discretion in this case, which the plaintiff voluntarily dismissed once this conduct came to light, does not call for shifting of these fees.

## II.    STATEMENT OF FACTS AND OF THE CASE[2]

This case presents a tale of temperaments and technology in the flooring industry, a story of former partners who now find themselves on different sides of an

_____

[2]This factual summary is derived from the competing submissions of the parties on these fees claims. (Docs. 106-113, 121-124, 129, 132, 134 and 135) Altogether the parties have submitted nearly 1,000 pages of materials advancing factual matters and legal arguments in support of their positions in this case. The parties have also extensively litigated the question of whether they should be permitted to engage in further discovery in support of these fees claims.

attorney fee dispute which has out-lived the merits of this lawsuit by some 14 months. This dispute retains vitality because it involves the application of technology to a potentially lucrative marketplace, the flooring market for large, high-rise office buildings. Indeed, the parties have estimated that the global market in cork-based products is $200,000,000, and that the global market for rubber products may be as great as $20,000,000,000, making this potentially an enormously profitable market.

With the advent of high-rise office construction, there has been a growing need for flooring products which are aesthetically appealing, comfortable for foot traffic, and have sound deadening qualities that reduce the ambient noise created by movement and activity in large office spaces. To achieve these results, flooring manufacturers have for many years, and in many forms, experimented with combinations of three components designed to achieve the desired combination of aesthetics, comfort, and quiet: a bottom sub-floor layer, some middle layer of material which adds comfort while dampening sound, and a decorative top layer of carpeting.

The parties to our litigation are businesses which compete in this specialized, but highly lucrative, market. The plaintiff, Dodge-Regupol, is a Pennsylvania company and is the successor corporation to a company known as Dodge Cork. Dodge Cork manufactured cork-based flooring products for commercial and office use. BSW, in turn, is a German company, which has developed and marketed

commercial products made from recycled rubber for the past four decades. One aspect of BSW's business has involved the use of recycled rubber products in commercial flooring, utilizing the qualities of recycled rubber to make commercial flooring products which are both comfortable and quiet. Finally, RB Rubber is an Oregon corporation which does business in Pennsylvania and also markets flooring products which contain rubber underlayment.

In the late 1980's Dodge and BSW began negotiations aimed at entering into a joint venture to market BSW product lines in the United States. As a result of these negotiations, in approximately 1989 BSW and Dodge entered into a joint venture agreement. As part of that agreement, Dodge-Regupol was created, and Dodge-Regupol began selling BSW products in North America. Moreover, the joint venture agreement provided that the board of directors of Dodge-Regupol would consist of officials from both Dodge Cork and BSW, thus ensuring that the German firm would be a participant in, and fully informed of, the activities of its joint venture partner, Dodge-Regupol.

As part of this joint venture marketing agreement, Dodge-Regupol received access to manufacturing information regarding a number of BSW product lines, including flooring products sold by BSW. These flooring products contained many qualities which would later find their way into the Dodge-Regupol patent application.

The products consisted of decorative carpeting which covered a layer of recycled rubber material, and was placed over a sub-floor. The BSW flooring was manufactured to specific tolerances, and the flooring was made, and marketed, as a product which provided comfort and sound absorption due to the use of the rubber sheet as a carpet underlayment. Because of its involvement in the marketing of these BSW products in North America, Dodge-Regupol and its principals had access to detailed information concerning BSW's flooring products throughout the 1990's.

In August 2001, Dodge-Regupol applied for a patent on a flooring product invention. The patent application identified a Dodge-Regupol employee, Paul Downey, as the sole inventor of this flooring product. As described in this patent application, the flooring product bore striking similarities to the long-standing BSW product line. The patent application described a decorative carpeting placed on a rubber layer manufactured to tolerances similar to those found in the BSW products. The application also noted the sound absorption qualities of this claimed invention, a matter which had been part of Dodge-Regupol's and BSW's marketing efforts over the prior decade. While the patent application described this invention in detail and compares the carpeting and rubber underlayment to a variety of other technologies that existed as prior art in this field, the application made absolutely no mention of the German prior art, BSW's flooring products.

BSW, through two of its officers, Paul Breuer and Thomas Beitzel, now claims that it was unaware of the Dodge-Regupol patent and asserts that the application is fraudulent or inequitable because it does not reveal the nature and extent of this German prior art. Dodge-Regupol, in turn, notes that the BSW officers were part of the Dodge-Regupol board at the time that Dodge-Regupol began filing lawsuits to enforce its patent. According to Dodge-Regupol, the BSW directors were briefed on this litigation and never voiced objections to these lawsuits based on the fact that the Dodge-Regupol invention was derived from BSW's prior art. Dodge-Regupol further observes that its joint venture with BSW has now ended, and that Breuer, Beitzel and BSW are now competitors in this lucrative market, a factor which Dodge-Regupol suggests profoundly colors BSW's current views regarding this patent, a patent that they allegedly agreed should be enforced while they were in a joint venture with Dodge-Regupol.

Dodge-Regupol commenced this patent action in January of 2006. (Doc. 1.) RB responded to this complaint by, in part, challenging the validity of this patent. (Doc. 4.) The parties then began a process of hotly contested litigation which spanned the following four years. One particularly acrimonious aspect of this litigation involved discovery into the relationship between BSW and Dodge-Regupol, and the extent to

which Dodge-Regupol's patent failed to disclose the full scope of its knowledge concerning this German prior art.

The results of this discovery litigation throughout 2007 have been mutually unsatisfactory for the parties. For its part, RB has identified delays in discovery responses from Dodge-Regupol, as well as inconsistencies between the information provided in depositions by the principals in Dodge-Regupol, Art Dodge and Paul Downey, and statements and documents obtained from BSW, the former partner and current competitor of the plaintiff. Dodge-Regupol, in turn, contends that these inconsistencies are a function of efforts by a non-party, BSW, to undermine this patent now that its joint venture with Dodge-Regupol has come to an end. Dodge-Regupol also asserts that it has been aggrieved by RB in the discovery process, and that it has been "sandbagged" by these RB disclosures of information obtained from BSW throughout the discovery process.

We find that, while the process has not been a model of transparency, it has ultimately provided an extensive body of material to the parties, and the court, regarding the extent to which information concerning the BSW flooring process existed in the prior art by 2001. Armed with this information, in May of 2008, Dodge-Regupol moved to dismiss this patent infringement action and covenanted not to sue RB, an action which appeared to reflect a careful assessment of shifting

litigative risk as the case progressed. (Docs. 85, 86.) This voluntary dismissal motion inspired further pleadings and litigation throughout the summer of 2008, (Docs. 92, 93, 96) before the motion was granted and the case was dismissed on November 12, 2008. (Docs. 98, 99.)

This November 12, ruling resolved the merits of this infringement action, but left the question of attorneys fees to be resolved. (Id.) That question has consumed the last 14 months in this case, and has inspired fifty different, competing pleadings. (Docs. 106-160.) This matter has now been referred to this Court for resolution. (Doc. 148.) As a result of this intensive fees litigation spanning more than a year these fee petitions are now ripe for resolution.

## III.    DISCUSSION

### A.    Fee Shifting Petitions in Patent Litigation, Standards of Review

In this case we are called upon by both parties to exercise our discretion in this field and deviate from the typical practice in federal civil litigation with respect to fees and costs of litigation. That typical practice, which is generally referred to as the "American Rule," provides that each party to a lawsuit bears its own attorney fees and expenses. Wedgetail Ltd., v. Huddleston Deluxe, Inc. 576 F.3d 1302, 1304 (Fed. Cir. 2009); Ultra-Temp, Corp. v. Advanced Vacuum Systems, Inc., 189 F.R.D. 17, 19 (D. Mass. 1999). Here, the competing parties each seize upon a different, narrow

exception to the American Rule to invite us to exercise our discretion and shift attorney fees and costs to their adversary.

## 1.   <u>35 U.S.C. § 285</u>

For its part, RB claims that Dodge-Regupol should be ordered to reimburse its attorneys' fees because it engaged in misconduct when procuring its patent and in the course of litigating this infringement action. Specifically, RB claims that Dodge-Regupol's patent application materially misled the Patent and Trademark Office by concealing the nature and extent of the German prior art in this field. RB then contends that this same pattern of nondisclosure occurred in the course of discovery in this litigation, until the omissions in the Dodge-Regupol patent application came to light and led to the voluntary dismissal of this action.

RB looks to a provision of the patent laws to shift its fees to Dodge-Regupol, specifically, 35 U.S.C. § 285, which provides as follows:

> The Court in exceptional cases may award reasonable attorney fees to the prevailing party.

As this statutory text implies:

> Deciding a motion for attorney fees under 35 U.S.C. § 285 (1982) requires a two-step analysis. The district court must determine whether the case is "exceptional;" if it is, then it is within the court's discretion to award attorneys' fees to the prevailing party. It is only after a specific

finding of exceptional circumstances has been made that the discretion
to award attorneys' fees can be exercised.

J.P. Stevens Co., Inc. v. Lex Tex Ltd., Inc. 822 F.2d 1047, 1050 (Fed. Cir. 1987).

With respect to the first, threshold component of this two-step analysis,
determining whether a case is "exceptional", it is clear that by limiting fee petitions
under § 285 to "exceptional cases" Congress evinced an intention that this sanction
should only be used sparingly. Thus, it is well-settled that:

> [O]nly a limited universe of circumstances warrant a finding of
> exceptionality in a patent case: "inequitable conduct before the [Patent
> and Trademark Office]; litigation misconduct; vexatious, unjustified,
> and otherwise bad faith litigation; a frivolous suit or willful
> infringement." Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279
> F.3d 1022, 1034 (Fed. Cir.2002). . . . ."[M]indful of the limited
> circumstances in which an award of attorney fees is appropriate," Forest
> Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1329 (Fed. Cir.2003), []
> court[s] ha[ve] rejected an "expansive reading of § 285," which would
> permit findings of exceptionality in circumstances other than those listed
> above, id. ....

Wedgetail Ltd. v. Huddleston Deluxe, Inc. 576 F.3d 1302, 1304-1305 (Fed. Cir.

2009)(citations omitted); see also Brasseler, U.S.A. I, L.P., v. Stryker Sales Corp.,

267 F.3d 1370, 1380 (Fed.Cir.2001); Hoffmann-La Roche Inc. v. Invamed Inc., 213

F.3d 1359, 1365 (Fed.Cir.2000) ("Among the types of conduct which can form a

basis for finding a case exceptional are willful infringement, inequitable conduct

before the P.T.O., misconduct during litigation, vexatious or unjustified litigation,

and frivolous suit. Such conduct must be supported by clear and convincing evidence." (quoting <u>Beckman Instruments, Inc., v. LKB Produkter AB</u>, 892 F.2d 1547, 1551 (Fed. Cir.1989))); <u>Multiform Desiccants, Inc. v. Medzam, Ltd.</u>, 133 F.3d 1473, 1481-82 (Fed. Cir.1998) ( "Findings of exceptional cases have been based on a variety of factors; for example, willful or intentional infringement, inequitable conduct before the Patent and Trademark Office, vexatious or unjustified litigation, or other misfeasant behavior."); <u>Mahurkar v. C.R. Bard, Inc.</u>, 79 F.3d 1572, 1579 (Fed. Cir.1996) ("Bad faith litigation, willful infringement, or inequitable conduct are among the circumstances which may make a case exceptional."); <u>Bayer Aktiengesellschaft v. Duphar Int'l Research B.V.</u>, 738 F.2d 1237, 1242 (Fed. Cir.1984) ("In awarding attorney fees to a prevailing accused infringer, such exceptional circumstances include, inter alia, inequitable conduct during prosecution of a patent, misconduct during litigation, vexatious or unjustified litigation, or a frivolous suit.")

Thus, petitions to shift attorney fees are not a routine or ordinary aspect of patent litigation. Quite the contrary, as the United States Court of Appeals for the Third Circuit has repeatedly stated:

> It is clear that counsel fees should not be awarded as a matter of course, nor as a penalty against the loser who followed conventional procedure. <u>Jacquad Knitting Mach. Co. v. Ordnance Gauge Co.</u>, 3 Cir., 1954, 213

F.2d 503, 508-509; <u>Pennsylvania Crusher Co. v. Bethlehem Steel Co.</u>, 3 Cir., 1951, 193 F.2d 445, 450-451; <u>Park-In Theatres v. Perkins</u>, 9 Cir., 1951, 190 F.2d 137, 142-143; <u>Dubil v. Rayford Camp & Co.</u>, 9 Cir., 1950, 184 F.2d 899, 902-903. The exercise of discretion in favor of the allowance should be 'bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear.' <u>Park-In Theatres v. Perkins, supra</u>, 190 F.2d at page 142.

<u>R. M. Palmer Co. v. Ludens, Inc.</u>, 236 F.2d 496, 501-502 (3d. Cir.1956). In short, § 285 is only "designed to prevent a gross injustice to an alleged infringer." <u>Pennsylvania Crusher Co. V. Bethlehem Steel, Co.</u>, 193 F.2d 445, 451 (3d Cir. 1951). Because this sanction is intended only for exceptional cases where fee shifting is essential to prevent a gross injustice, the party seeking sanctions:

> "bears the burden of establishing, by clear and convincing evidence under a totality of the circumstances, that the instant case is 'exceptional.' " <u>Queen's University At Kingston v. Kinedyne Corporation</u>, 1996 WL 370170*1 (D.Kan.) <u>citing Eltech Sys. Corp. v. PPG Indus., Inc.</u>, 903 F.2d 805, 811 (Fed. Cir.1990); <u>Imagineering, Inc. v. Van Klassens, Inc.</u>, 53 F.3d 1260, 1267 (Fed. Cir.1995) ("To prevail, [movant] had to show by clear and convincing evidence that [nonmovant's] conduct was exceptional."); <u>Machinery Corporation of America v. Gullfiber AB</u>, 774 F.2d 467, 471 (Fed. Cir.1985) ("only after the prevailing party has established the exceptional nature of the case by clear and convincing evidence should the district court decide whether or not to make the award [of attorney fees].").

Ultra-Temp Corp. v. Advanced Vacuum Systems, Inc. 189 F.R.D. 17, 19 (D.Mass. 1999).

Furthermore, with respect to one of the narrow and exceptional circumstances which may warrant an attorneys' fee award, a finding of inequitable conduct before the Patent and Trademark Office when applying for a patent: "Inequitable conduct is an equitable issue committed to the discretion of the trial court and is, therefore, reviewed . . . under an abuse of discretion standard." Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 267 F.3d 1370, 1379 (Fed. Cir. 2001)(citation omitted.)

Yet, a threshold finding of exceptional circumstances does not necessarily compel an award of attorney fees under § 285. Rather, even in those instances in which there has been a showing of exceptional circumstances, the award of such fees still rests in the discretion of the court. Thus:

> [E]ven where a case is deemed "exceptional" for purposes of § 285, . . . it does not necessarily follow that attorney's fees must be awarded to the prevailing party. Rather, there are a number of factors courts may consider in determining whether an award of attorney's fees is warranted, including the "closeness of the case, tactics of counsel, the conduct of the parties and any other factors that may contribute to a fairer allocation of the burdens of litigation as between winner and loser." J.P. Stevens Co., Inc. v. Lex Tex Ltd., Inc., 822 F.2d 1047, 1051 (Fed. Cir.1987).

Synthon IP, Inc. v. Pfizer Inc., 484 F.Supp.2d 437, 442 (E.D.Va. 2007). See e.g.,

Hardinge Company, Inc. v. Jones & Laughlin Steel Corp., 275 F.2d 37, 38 (3d. Cir. 1960); Jacquard Knitting Machine, Inc., v. Ordnance Gauge Co., 213 F.2d 503, 509 (3d. Cir. 1954). As the Federal Circuit Court has observed:

> Thus, neither the statute nor [case law] requires or contemplates that attorneys' fees be awarded to the alleged infringer in an inequitable conduct case "absent compelling countervailing circumstances." Moreover, the statute does not contemplate that a prevailing alleged infringer should be treated as a "private attorney general" for invalidating a "fraudulent" patent. Rather, its purpose is to provide discretion where it would be *grossly unjust* that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear.

J.P. Stevens Co., Inc. v. Lex Tex Ltd., Inc. 822 F.2d at 1052 (citations omitted, emphasis in original).

These legal benchmarks, which set an exacting threshold factual standard for fee petitions in patent cases, and then confer these fee decisions to the sound discretion of the court, frequently call for very fact-specific analysis of fee claims under § 285. However, two recurring themes emerge from these cases. First, while courts have found exceptional circumstances and struck the balance of equities in favor of fee awards in patent cases which proceed to trial without just cause, in instances where a plaintiff has elected to voluntarily dismiss an infringement action courts have often rejected fee petitions. See, e.g., Wedgetail Ltd. v. Huddleston Deluxe, Inc., 576 F.3d 1302 (Fed. Cir. 2009) (voluntary dismissal, fee petition

denied); <u>Hardinge Company. Inc. v. Jones & Laughlin Steel Corp</u>., 275 F.2d 37 (3d. Cir. 1960)(same); <u>see also Jacobsen v. Katzer</u>, 609 F.Supp.2d 925, 931 (N.D. Cal. 2009). Moreover, the United States Court of Appeals for the Third Circuit applies § 285 in a particularly exacting fashion, frequently affirming the denial of fee requests which do not meet these demanding standards; <u>see, e.g.</u>, <u>Chemical Construction Corp. v. Jones & Laughlin Steel Corp</u>; 311 F.2d 367 (3d. Cir. 1962); <u>Hardinge Company. Inc. v. Jones & Laughlin Steel Corp</u>., 275 F.2d 37 (3d. Cir. 1960); <u>Jacquard Knitting Machine, Inc., v. Ordnance Gauge Co</u>., 213 F.2d 503, 509 (3d. Cir. 1954), while also vacating such awards in those instances where the moving party has not shown exceptional circumstances "which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear." <u>R. M. Palmer Co. v. Ludens, Inc</u>., 236 F.2d at 502; <u>Pennsylvania Crusher Co. V. Bethlehem Steel, Co</u>., 193 F.2d 445, 451 (3d Cir. 1951).

### 2.  <u>Rule 37 of the Federal Rules of Civil Procedure</u>

Not to be out-done, for its part Dodge-Regupol also seeks an award of attorneys' fee from RB, claiming that RB engaged in litigation misconduct by failing to timely disclose in the course of discovery information which it possessed relating to the nature and extent of the existing prior art in Germany at the time of the Dodge-

Regupol patent application, as well as the knowledge that Dodge had of this prior art when it applied for the patent on this flooring. According to Dodge-Regupol, under Rule 26(e) of the Federal Rules of Civil Procedure, RB had an obligation to disclose this information which it possessed in a "timely manner." By failing to do so, Dodge -Regupol insists that RB unreasonably prolonged discovery, and effectively "sandbagged" the plaintiff in this case. Thus, Dodge-Regupol–which is the subject of a sanctions motion based in part upon allegations of litigation misconduct–asserts that it, in fact, was the victim of litigation misconduct.

Dodge-Regupol's invitation to deviate from the American Rule and shift the burden of its attorneys fees to RB is premised upon two provisions of the Federal Rules of Civil Procedure. First, Dodge-Regupol cites Rule 26(e), which creates a general obligation to update and supplement discovery disclosures , and provides as follows:

> **1) _In General._** A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:

> **(A)** _in a timely manner_ if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Rule 26(e)(1)(A), F. R. Civ. P.(emphasis added.)

Rule 37(c)(1) of the Federal Rules of Civil Procedure, in turn, provides for sanctions

for those who fail to abide by their obligation to supplement discovery in a timely

fashion, stating that:

> If a party fails to provide information or identify a witness as required
> by Rule 26(a) or (e), the party is not allowed to use that information or
> witness to supply evidence on a motion, at a hearing, or at a trial, unless
> the failure was substantially justified or is harmless. In addition to or
> instead of this sanction, the court, on motion and after giving an
> opportunity to be heard:
>
> **(A)** may order payment of the reasonable expenses, including attorney's
> fees, caused by the failure

Rule 37(c)(1)(A), F. R. Civ. P.

Like decisions regarding fee petitions under § 285, judgments concerning

whether attorneys' fees are an appropriate sanction for Rule 37 discovery violations

are matters rooted in the sound discretion of the court. See, e.g.,Grider v. Keystone

Health Plan Central, Inc., 580 F.3d 119, 134 (3d Cir.2009); PPG Industries, Inc. v.

Zurawin, 52 F.App'x 570, 574 (3d Cir. 2002); Newman v. GHS Osteopathic Inc., 60

F.3d 153, 156 (3d Cir. 1995). This discretion is guided, however, by basic principles

of fairness.  Thus,

> "[n]otwithstanding Rule 37[], the district court may be found to have
> abused its discretion if [its sanctions ruling] results in fundamental

unfairness in the trial of the case." <u>Orjias v. Stevenson</u>, 31 F.3d 995, 1005 (10th Cir.) (emphasis added), <u>cert. denied</u>, 513 U.S. 1000, 115 S.Ct. 511, 130 L.Ed.2d 418 (1994); <u>see also Bronk v. Ineichen</u>, 54 F.3d 425, 432 (7th Cir.1995) (interpreting Rule 37(c)(1)) (In ruling on motion [for Rule 37 sanctions], " 'district court should consider prejudice or surprise to opposing party, ability of party to cure prejudice, likelihood of disruption, and moving party's bad faith or unwillingness to comply.'") (citation omitted)

<u>Newman v. GHS Osteopathic, Inc.</u> 60 F.3d at 156.

Thus, at bottom, the two narrow exceptions to the American Rule cited by each party in support of their competing claims that attorneys fees should be shifted to the opposing party in this patent case each call upon the court to engage in a discretionary judgment regarding whether such a sanction would be fair and just in the facts and circumstances of the case.

### B    These Competing Fees Claims Should be Denied

In this case we believe that the proper exercise of this wide-ranging discretion calls for the denial of both, competing fees petitions submitted by the parties in the protracted and contentious litigation. Accordingly, for the reasons set forth below we find that both fees motions (Docs. 106 and 121) should be denied.

### 1.    Neither Party Has Shown Discovery Litigation Misconduct Warranting An Award of Attorneys Fees

18

At the outset, each party has cited litigation misconduct by the opposing party in the course of this lawsuit as grounds for the shifting of attorneys' fees. Discovery-based sanctions claims in federal civil litigation, while not commonplace, are not unheard of and are, in fact, a function of a dynamic tension found within the Federal Rules of Civil Procedure, a dynamic tension that can be heightened by the very nature of the adversarial process.

That dynamic tension is a function of the fact that the rules create imperatives towards truthfulness and transparency in discovery, but often leave questions of timing and tactics in discovery to the exercise of individual professional judgment by counsel. In an adversarial setting, the exercise of this professional judgment over the timing of discovery disclosures can lead to conflict, controversy and claims for sanctions.

Such is the case here. In this case each party has lodged competing claims for attorneys' fees premised, in part, upon complaints regarding the timing and completeness of discovery disclosures. For its part, RB contends that delays by Dodge-Regupol in acknowledging its access to this information regarding the existing German prior art in the flooring industry at the time of its patent application, coupled with incomplete, and in its view, misleading answers to discovery concerning this prior art, constitutes the type of "vexatious, unjustified, and otherwise bad faith

litigation" which can amount to exceptional circumstances justifying an award of attorneys fees.

Dodge-Regupol, in turn, charges that it has been the victim of discovery misconduct in this case, complaining that RB "sandbagged" it by obtaining information relating to Dodge-Regupol's contacts with this German prior art in the flooring industry, without timely disclosing that information as required by Rules 26 and 37, in order to attempt to unfairly cast Dodge-Regupol in an unfavorable light.

Having carefully examined these competing claims, we conclude that, while there may have been instances in which the parties each placed a greater value on tactical advantage than on timely transparency, the actions of the parties in the course of discovery do not rise to the level of misconduct warranting sanctions and fees. In this case, despite delays, a full picture eventually emerged regarding the nature of the plaintiff's access to the German prior art in this flooring technology, and the parties were able to settle the merits of their dispute. In such a setting, we find that this process, while contentious, did not so far exceed the "give and take" of discovery that sanctions are warranted. See Cabot Corporation v. Solution Technology, Inc., 122 F.Supp.2d 599 (W.D.N.C. 2000).

Turning first to Dodge-Regupol's motion for attorneys fees under Rule 37, we believe that this claim merits only brief consideration. This motion focuses largely

upon the timing of disclosures by RB concerning its knowledge of Dodge-Regupol's contacts with prior art in the flooring field at the time of the patent application. Characterizing RB's delay in disclosing the information it had obtained linking Dodge-Regupol to this German technology as "sandbagging", the plaintiff demands fees as sanctions for this alleged misconduct. The unspoken, but apparent, premise of this argument is that RB had an obligation to disclose what it knew, or suspected, concerning the contacts between Dodge-Regupol and German flooring manufacturers before the plaintiff provided answers to discovery on this issue, answers which might be perceived as inconsistent with the information in RB's possession. Dodge-Regupol does not cite to any specific legal authority which compels an adverse party in a civil lawsuit to make such disclosures to help their opponent frame answers which will not then be questioned as incomplete, and our research reveals a paucity of case law defining deadlines and timetables for supplementing discovery disclosures under Rules 26 and 37. See Fitz, Inc. v. Ralph Wilson Plastics Company, 174 F.R.D. 587, 591 (D.N.J. 1997). In the absence of clear, controlling legal authority defining what constitutes timely supplementation of discovery, we cannot say that the timing of RB's disclosure of this particular information reflected a choice which favored tactics over timely truthfulness in such an unfairly prejudicial fashion that monetary sanctions are justified here. Rather than finding that the timing of this disclosure

amounts to sanctionable misconduct, we feel that this episode provides an appropriate cautionary note to all parties in litigation: Always answer discovery with a clarity, and completeness, that assumes that the opposing party already knows everything about the matters in dispute. This approach to discovery is consistent with the dictates of Rule 26, and will avoid the concerns regarding a perceived lack of candor which have crept into this litigation.

As to RB's claims for attorneys fees premised on alleged discovery misconduct by Dodge-Regupol, this claim is brought under § 285, and requires a showing of exceptional circumstances to warrant a fee award. This is a demanding standard and as we have previously noted: "It is clear that counsel fees should not be awarded as a matter of course, nor as a penalty against the loser who followed conventional procedure. . . . [Rather], [t]he exercise of discretion in favor of the allowance should be 'bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it *grossly unjust* that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear.'"R. M. Palmer Co. v. Ludens, Inc., 236 F.2d 496, 501-502 (3d. Cir.1956)(citations omitted, emphasis added). Indeed, when examining patent case fee petitions under § 285 which are based upon alleged discovery misconduct:

It is the judicial duty to refuse to condone behavior that exceeds reasonable litigation tactics." <u>Sensonics</u>, 81 F.3d at 1575. However, "[e]ven an exceptional case does not require in all circumstances the award of attorneys' fees." <u>S.C. Johnson</u>, 781 F.2d at 201. The purpose of § 285 is "to provide discretion where it would be *grossly unjust* that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear." <u>J.P. Stevens</u>, 822 F.2d at 1052 (emphasis in original); <u>accord, Sun-Tek Industries v. Kennedy Sky Lites</u>, 929 F.2d 676, 679 (Fed.Cir.1991) ("Section 285 may be used to award attorney fees to prevent "gross injustice" when a party has litigated vexatiously."); <u>Machinery Corp.</u>, 774 F.2d at 472; <u>Rohm & Haas Co.</u>, 736 F.2d at 691 ("The exercise of discretion in favor of such an allowance [of fees] should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular lawsuit should be left to bear the burden of his own counsel fees which prevailing litigants normally bear." <u>Quoting Park-in Theatres, Inc. v. Perkins</u>, 190 F.2d 137, 142 (9th Cir.1951)). The court "may consider the litigation actions of both sides in connection with § 285." <u>Sensonics</u>, 81 F.3d at 1575. The court's decision as to the award of attorneys' fees "should be in furtherance of the policies of the laws that are being enforced, as informed by the court's familiarity with the matter in litigation and the interest of justice." <u>S.C. Johnson</u>, 781 F.2d at 201.

<u>Cabot Corp. v. Solution Technology, Inc</u>. 122 F.Supp.2d 599, 644-645 (W.D.N.C. 2000).

Applying this standard, where an assessment of the discovery litigation tactics employed in a case leads a court to conclude that this discovery was hotly contested on both sides, but did not fall beyond the give-and-take of discovery, a finding of exceptional circumstances justifying fees under § 285 is not warranted. <u>Id</u>.

In this case, we believe that, while the alleged delays and incompleteness in discovery cited by RB are troubling, and may fall near the outer limits of the give-and-take of actively contested discovery, in the heated context of this case they are not so extraordinarily unfair and prejudicial to qualify as an 'exceptional case" under § 285. Indeed, many of the facts which were contested in this discovery were independently known or learned by RB, and much of this disputed information was ultimately confirmed, at least in part, by Dodge-Regupol. In this setting, where discovery by both parties was prolonged and actively contested, and each party has felt aggrieved by the timing and completeness of its opponent's disclosures, we do not find that Dodge-Regupol's conduct rose to the level of an egregious abuse of the judicial process warranting a finding of exceptional circumstances permitting an award of attorneys' fees under § 285. Id. at 649.

> **2.** **Even Assuming that Dodge-Regupol's Failure to Disclose Information Regarding the German Prior Art in its Patent Application was Inequitable Conduct, We Will, in the Exercise of its Discretion, Decline to Award Attorneys' Fees**

RB also argues that this is an exceptional case justifying the award of attorneys' fees because the evidence shows, in a clear and convincing fashion, that Dodge-Regupol engaged in fraudulent or inequitable conduct in its patent application before the Patent and Trademark Office when it neglected to identify the German

prior flooring art, or its longstanding involvement with German manufacturers who were producing similar rubber-backed flooring products, in that application. This issue comes before the Court in a somewhat unusual fashion, where there has been no trial of this issue, or other litigation that fully and factually addressed the merits of this contention that Dodge-Regupol's patent application was materially incomplete in its failure to identify the German prior art. Recognizing this challenge, and the atypical procedural posture of this case, RB's motion is thoroughly documented and well supported by declarations from some of the principals in these German companies, who formerly did business with Dodge-Regupol, as well as by an expert declaration, which carefully details the potential materiality of these omissions to the Patent and Trademark Office.

This allegation is the most serious, and troubling, claim made in this fees petition, and in a step which implicitly recognizes the power of this argument as a factual matter, Dodge-Regupol initially contends that we should reject this claims without considering its merits, because RB has failed to plead inequitable conduct with particularity. This argument merits only brief consideration. RB's motion is a comprehensive pleading, supported by more than 600 pages of evidentiary material and legal argument. (Docs. 106-113.) In short, whatever shortcomings one might find in this petition, it cannot be criticized for a lack of particularity.

Moreover, as a factual matter, RB's motion raises troubling questions regarding the accuracy and completeness of Dodge-Regupol's disclosures when it applied for this patent. It is apparent from RB's submission that, although Dodge-Regupol through its longstanding joint ventures with the German firm BSW had extensive experience marketing flooring products with rubber underlayment for sound dampening, its patent application mentions none of this very similar, pre-existing prior art. RB argues with some force that it is difficult to conclude that this omission is merely inadvertent, since Dodge-Regupol and the German manufacturer BSW shared common corporate directors, and Dodge-Regupol had specific knowledge of the flooring technology used by its German counterpart, BSW. Moreover, while the Dodge-Regupol patent application does not mention this very similar prior art, it does describe other, less similar sound dampening flooring technologies to the Patent and Trademark Office in its application.

For its part, Dodge-Regupol launches a wholesale assault on RB's presentation by attacking the credibility of an important component part of the presentation, the information provided by the German principals in BSW identifying the extent and degree of that company's disclosure of similar rubber floor sound dampening technologies to Dodge-Regupol at the time of this patent application. Dodge-Regupol argues forcefully that the BSW officials cited by RB in its fees petition also served

on the corporate board of Dodge-Regupol during the period when this patent was secured, and this patent lawsuit was commenced. Dodge-Regupol notes that its former co-venturers never complained that the active litigation of this patent was inequitable while they served on the Dodge-Regupol corporate board, and argue that the contradiction between their past actions and their current declarations is now fueled by competitive animus and is so "reprehensible" that their declarations should be given no weight. These competing visions of this case are argued at great length, and with great passion, by the parties who invite the court to indulge them in lengthy discovery or collateral evidentiary proceedings of these claims, steps which would be tantamount to a trial of this case which was settled on its merits fourteen months ago.

We will decline these invitations and instead resolve this matter, on the current and thoroughly documented factual record, through the exercise of the broad discretion conferred upon us under § 285. Specifically, we conclude that, while we could infer inequitable conduct on these facts, we will decline to make such a finding and instead conclude that, even if we assume that there was inequitable conduct here, the proper exercise of discretion is for each party to bear its own costs.

In reaching this conclusion we note at the outset that we could infer inequitable conduct in the patent application process from the facts of this case. In this regard, the

legal standards governing a finding of inequitable conduct in the patent application

process have been aptly summarized in the following terms:

> [T]o reach a finding of inequitable conduct, the district court must determine that information known to the inventors or their representatives was both material and intentionally withheld. FMC Corp. v. Manitowoc Co., 835 F.2d at 1415, 5 USPQ2d at 1116 (Fed.Cir.1987). Information is deemed material if there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent. J.P. Stevens & Co. v. Lex Tex Ltd., 747 F.2d 1553, 1559, 223 USPQ 1089, 1092 (Fed.Cir.1984). To avoid a finding of inequitable conduct, doubts concerning whether information is material should be resolved in favor of disclosure. Critikon, 120 F.3d at 1257, 43 USPQ2d at 1669. Where an applicant knows of information the materiality of which may so readily be determined, he or she cannot intentionally avoid learning of its materiality, even through gross negligence; in such cases the district court may find that the applicant should have known of the materiality of the information. Id.; Nordberg, Inc. v. Telsmith, Inc., 82 F.3d 394, 397, 38 USPQ2d 1593, 1595 (Fed.Cir.1996) (quoting FMC Corp. v. Manitowoc Co., 835 F.2d at 1415, 5 USPQ2d at 1116).
>
> Typically, a finding of inequitable conduct hinges on whether the evidence as a whole indicates that patentees or their representatives acted with the intent to deceive. See, e.g., Symbol Techs., Inc. v. Opticon, Inc., 935 F.2d 1569, 1582, 19 USPQ2d 1241, 1250 (Fed.Cir.1991). When balanced against high materiality, the showing of intent can be proportionally less. N.V. Akzo v. E.I. DuPont de Nemours, 810 F.2d 1148, 1153, 1 USPQ2d 1704, 1708 (Fed.Cir.1987).

Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp. 267 F.3d 1370, 1380-1381 (Fed. Cir. 2001).

While the evidence tendered by RB makes a significant threshold showing of

a failure to disclose, which might as a legal matter permit an inference of inequitable

conduct by Dodge-Regupol, a final judgment on these issues would require protracted

litigation and is in our view unnecessary since the resolution of this issue would not by itself determine whether RB is entitled to attorneys fees. Rather, this finding would merely set the stage for the exercise of discretion by the court, since: "even where a case is deemed 'exceptional' for purposes of § 285, . . . it does not necessarily follow that attorney's fees must be awarded to the prevailing party. Rather, there are a number of factors courts may consider in determining whether an award of attorney's fees is warranted, including the 'closeness of the case, tactics of counsel, the conduct of the parties and any other factors that may contribute to a fairer allocation of the burdens of litigation as between winner and loser.'" Synthon IP, Inc. v. Pfizer Inc., 484 F.Supp.2d 437, 442 (E.D. Va. 2007)(citations omitted.)

Thus, ultimately, it is the exercise of this discretion that controls here, even if there is a finding of inequitable conduct. In exercising this discretion, assuming that the conduct of Dodge-Regupol in applying for this patent may have been inequitable, we note that when that potential inequity was revealed in the course of discovery Dodge-Regupol voluntarily abandoned its lawsuit, and dismissed this case. In the past, in such instances, where a party voluntarily dismisses a case, courts have held that the proper exercise of discretion typically entails adherence to the American Rule with each side bearing its own costs. See, e.g., Wedgetail Ltd. v. Huddleston Deluxe, Inc., 576 F.3d 1302 (Fed. Cir. 2009) (voluntary dismissal, fee petition denied);

Hardinge Company. Inc. v. Jones & Laughlin Steel Corp., 275 F.2d 37 (3d. Cir. 1960)(same); see also Jacobsen v. Katzer, 609 F.Supp.2d 925, 931 (N.D. Cal. 2009).

Moreover, such an exercise of discretion would be particularly appropriate here. Given what are clearly the conflicting motivations of the parties and witnesses in this longstanding dispute, any finding of inequitable conduct would be a close case turning on credibility determinations between witnesses with differing and compelling interests. This is a factor which weighs against exercising this discretion in favor of a fees award since such awards typically are not be appropriate under § 285 in close cases.

Indeed, imposing costs and fees in this case, where the plaintiff ultimately voluntarily dismissed this action, could actually have profound and negative implications. Such an exercise of discretion, could adversely affect counsel in their own exercise of discretion in choosing to discontinue litigation, since it would suggest that litigants who acknowledge changing circumstances may be punished for their candid acknowledgment that an action should be abandoned. As a general matter, we believe that sanctions should not be imposed in a fashion which encourages parties to continue with possibly meritless litigation. Instead, sanctions practice should encourage voluntary acknowledgments by parties that the time for litigation of an issue has drawn to a close.

Furthermore, we recognize that, even without a fees award, simply by prevailing in this action, RB has substantially opened markets in this flooring trade for itself, and has significantly curtailed the ability of Dodge-Regupol to attempt in future litigation to use this patent claim to maintain its market position. Thus, in this case the "'allocation of the burdens of litigation as between winner and loser,'" Synthon IP, Inc. v. Pfizer Inc., 484 F.Supp.2d at 442 (citations omitted), reveals that, by dismissing this case Dodge-Regupol has sustained long-term losses, and by securing this dismissal RB should enjoy long-term gains. Given these economic realities, further allocation of the costs of this litigation through fee shifting is neither necessary nor appropriate here.[3]

_____

[3]We also note that we believe that our finding that a reasonable inference could be made that Dodge-Regupol engaged in inequitable conduct should have a further deterrent effect on the plaintiff, and discourage the plaintiff from pursuing additional patent litigation of this type in the future. This is a concern raised by RB in its pleadings, which allege that, following the settlement of the merits of this case, Dodge-Regupol continued to engage in a pattern of litigation conduct involving asserting the validity of this patent in litigation and then voluntarily dismissing these claims only after its allegedly inequitable conduct comes to light. (Doc.160.) We cannot speak to how other courts should rule in future litigation by Dodge-Regupol. In this case, while we believe that the proper exercise of discretion in this case is to err on the side of not assessing fees against a patent litigant the first time that litigant voluntarily dismisses a claim; see, e.g., Wedgetail Ltd. V. Huddleston Deluxe, Inc., 576 F.3d 1302 (Fed. Cir. 2009); (voluntary dismissal, fee petition denied); Hardinge Company. Inc. v. Jones & Laughlin Steel Corp., 275 F.2d 37 (3d. Cir. 1960)(same); Jacobsen v. Katzer, 609 F.Supp.2d 925, 931 (N.D. Cal. 2009), we also clearly recognize that engaging in additional patent lawsuits following this finding that a reasonable inference could

### 3. Further Protracted Discovery and Evidentiary Proceedings Are Not Appropriate Here

Finally, given the result which we reach here on the merits of this fees dispute, which resolves this dispute in the exercise of the court's discretion, we will also decline the parties' various invitations to indulge in further discovery or evidentiary hearings.

Declining such invitations lies within the sound discretion of the court, and is often the favored course in a case like this, where the merits of the dispute have been resolved by the parties more than a year ago through a stipulated settlement. In such instances:

> In considering whether . . . to hold such an adversarial hearing in [a patent] case, [we] note first that "[f]ee litigation is not to be used as a means for a party to litigate the substantive merits of the case." Indeed, because § 285 is recognized as an expression of Congress's view that attorneys fees should be available only in "rare and unusual circumstances," courts have been very reluctant to allow discovery on facts allegedly necessary to prove the exceptional nature of a case after its resolution "so as not to allow fee litigation to be the tail that wags the dog."

be made that the party engaged in inequitable conduct could invite a very different exercise of discretion in those subsequent cases , one which would favor sanctions for a repeat offender. In short, Dodge-Regupol acts at its great financial peril in the future if it persists in bringing patent infringement claims on these facts, in light of this court's ruling.

Euclid Chemical Co. v. Vector Corrosion Technologies, Inc,. No. 05-80, 2008 WL 4404540, *5 (N.D.Ohio Sept. 24, 2008).

Indeed, in such cases, where the parties have long since settled the merits of their patent dispute, it is clear that a " court justifiably [could] decline to have a bench trial on the issue of inequitable conduct after the complaint had been voluntarily dismissed with prejudice and judgment had already been entered. See Lighting World, 382 F.3d at 1366-67 (finding that since the issue had not been litigated prior to judgment, 'the district court was justified in not requiring a full trial on the issue of inequitable conduct as part of the attorney fee motion or in entering detailed findings of fact and conclusions of law')." Forcillo v. Lemond Fitness, Inc. 168 F.Appx. 429, 431 (Fed. Cir. 2006). Rather, where the issue of inequitable conduct was not fully litigated prior to the entry of a judgment on the merits, the district court is fully "justified in not requiring a full trial on the issue of inequitable conduct as part of the attorney fee motion or in entering detailed findings of fact and conclusions of law on the issue...." Lighting World, Inc. v. Birchwood Lighting, Inc. 382 F.3d 1354, 1367 (Fed. Cir. 2004). Similarly, post-judgment efforts in patent litigation to indulge in extensive further discovery, like the discovery requests made here by Dodge-Regupol, (Doc. 144) are strongly disfavored. Instead, "fees litigation discovery may, and must, be appropriately confined so as not to allow fee litigation

to be the tail that wags the dog." Aventis Cropscience, N.V. v. Pioneer Hi-Bred Intern., Inc. 294 F.Supp.2d 739, 743 -744 (M.D.N.C. 2003).

These principles apply with particular force here, where this case was resolved on its merits in 2008, but lingers on only due to the parties' persistent pursuit of attorneys' fees. Moreover, the factual record in this matter has already been thoroughly developed in a fashion which permits the court to reach fully-informed judgments regarding how it should exercise its broad discretion in this field, making further discovery or protracted litigation neither necessary nor appropriate. In this setting, we should not " allow fee litigation to be the tail that wags the dog." Aventis Cropscience, N.V. v. Pioneer Hi-Bred Intern., Inc. 294 F.Supp.2d at 744. Therefore, the parties' invitations to engage in further extended discovery and litigation of these competing fees claims should also be declined.

In short, the time has come for this litigation to draw to a close.

III.    **Conclusion**

Accordingly, for the foregoing reasons, IT IS ORDERED that the motions of Dodge-Regupol (Doc. 121) and RB (Doc. 106) for attorneys' fees are denied in the exercise of the Court's discretion. It is further ORDERED that the Court will decline

the motions and invitations of the parties, (Doc. 144) to engage in further extended

discovery and protracted litigation is support of these fees petitions.

So ordered this 31st day of March, 2010.


                                        ***S/Martin C. Carlson***
                                        Martin C. Carlson
                                        United States Magistrate Judge